**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

LETICIA M. ROMERO,

      Plaintiff,

v.                                          Case No. 3:18-cv-467-J-JRK

ANDREW M. SAUL,[1]
Commissioner of Social Security,

      Defendant.
_____

## OPINION AND ORDER[2]

### I. Status

Leticia M. Romero ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claims for disability income benefits ("DIB") and supplemental security income ("SSI"). Plaintiff's alleged inability to work is the result of stage two colon cancer. See Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"), filed June 13, 2018, at 258, 272, 397. Plaintiff filed applications for DIB on March 27, 2015[3] and for SSI on December 16, 2015, Tr. at 363, alleging a disability onset date of February 8, 2015, Tr. at 258, 273, 371. The applications

---

[1]     Andrew M. Saul became the Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Nancy A. Berryhill as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed June 13, 2018; Reference Order (Doc. No. 16), entered June 18, 2018.

[3]     Although actually completed on March 27, 2015, see Tr. at 363, the protective filing date of the DIB application is listed elsewhere in the administrative transcript as February 27, 2015, see, e.g., Tr. at 258, 272.

were denied initially, Tr. at 167, 258-70, 271, 288, 289-91, and upon reconsideration, Tr. at 167, 272-86, 287, 293, 294-98.[4]

On March 2, 2017, an Administrative Law Judge ("ALJ") held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). Tr. at 184-233. Plaintiff was fifty-two years old at the time of the hearing. Tr. at 188. The ALJ issued a Decision on May 2, 2017, finding Plaintiff not disabled through the date of the Decision. Tr. at 167-77.[5]

Thereafter, Plaintiff requested review of the Decision by the Appeals Council. See Tr. at 360. The Appeals Council received additional evidence in the form of a brief authored by Plaintiff's counsel. Tr. at 5, 6; see Tr. at 361 (brief). On February 9, 2018, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On April 6, 2018, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff makes six arguments: 1) "[t]he ALJ erred by not addressing each impairment alleged by . . . Plaintiff"; 2) "[t]he ALJ failed to provide a complete hypothetical question to the [VE] because he failed to mention all of . . . Plaintiff's documented symptoms"; 3) "[t]he ALJ's conclusions about Plaintiff's obesity pursuant to

---

[4] The administrative transcript does not contain the denial of the SSI claim, but the application was evidently denied as it was part of the ALJ's Decision. See Tr. at 167.

[5] The administrative transcript contains another decision dated October 17, 2014, but it relates to other applications for DIB and SSI from July 31, 2012. See Tr. at 238-52. The 2012 decision is not at issue in this case.

[Social Security Ruling ('SSR')] 02-1p are erroneous and inconsistent"; 4) "[t]he ALJ failed to properly evaluate Plaintiff's documented complaints of pain and the supportive objective findings"; 5) "[t]he ALJ's residual functional capacity [('RFC')] assessment is not supported by substantial evidence"; and 6) "[t]he ALJ erred by not making findings regarding the combination of . . . Plaintiff's impairments." Plaintiff's Memorandum of Law in Opposition to the Commissioner's Decision Denying Plaintiff Disability Insurance Benefits and Supplemental Security Income Benefits (Doc. No. 20; "Pl.'s Mem."), filed October 11, 2018, at 7 (emphasis omitted). On December 10, 2018, Defendant filed a Memorandum in Support of the Commissioner (Doc. No. 21; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

Plaintiff's fifth argument regarding the ALJ's RFC determination is deemed to be waived for lack of development as Plaintiff's "argument" consists entirely of case law. Pl.'s Mem. at 11-12; see, e.g., N.L.R.B. v. McClain of Ga., Inc., 138 F.3d 1418, 1422 (11th Cir. 1998) (stating that "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived"); see also T.R.C. ex rel. Boyd v. Comm'r, 553 F. App'x. 914, 919 (11th Cir. 2014) (citing McClain in a Social Security appeal and noting that the appellant "fail[ed] to develop any arguments demonstrating that the ALJ erred in his conclusions..."); Scheduling Order (Doc. No. 15), entered June 13, 2018, at 1 (directing parties to "identify with particularity the grounds upon which the administrative decision is being challenged," advising them that "[a]ny such

challenges must be supported by citation to the record of the pertinent facts and by citations of the governing legal standards," and that "[a]ny contention for which these requirements are not met is subject to being disregarded for insufficient development"). Accordingly, the undersigned does not address Plaintiff's fifth argument.

## II. The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 169-76. At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since February 8, 2015, the alleged onset date." Tr. at 169 (emphasis and citation omitted). The ALJ found at step two that Plaintiff "has the following severe impairments: a history of rectal

---

[6] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

- 4 -

cancer with postsurgical colostomy and subsequent hernia at the colostomy site; history of hypothyroidism; history of hyperlipidemia; history of diabetes and a history of morbid obesity." Tr. at 169 (emphasis and citation omitted). At step three, the ALJ concluded that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 171 (emphasis and citation omitted).

> The ALJ determined that Plaintiff has the following RFC:
>
> [Plaintiff can] perform light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.967(b). Specifically, [Plaintiff] can sit for 4 hours and stand/walk for 4 hours each in an 8[-]hour workday with the option to alternate her position between sitting and standing and walking every thirty minutes; she can lift/carry 20 pounds occasionally and 10 pounds or less more frequently; she can push and pull arm, hand or foot/pedal controls occasionally; she can occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; she can never crawl or squat; all other postural activities can be done occasionally (including balancing, stooping, crouching and kneeling); she can reach in all directions, handle, finger and feel without limitation; she should have no exposure to unprotected heights or work around dangerous moving machinery and concentrated industrial vibrations and she should work in a temperature controlled environment with access to a restroom as needed.

Tr. at 172 (emphasis omitted).

At step four, the ALJ relied on the testimony of the VE and found that Plaintiff "is unable to perform any of her past relevant work." Tr. at 175 (emphasis and citation omitted). At step five, after considering Plaintiff's age ("50 years old . . . on the alleged disability onset date"), education ("a limited education"), work experience, and RFC, the ALJ relied again on the testimony of the VE and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 175 (emphasis and citation omitted), such as "Marker," "Router," and "Routing Clerk," Tr. at

176. The ALJ concluded that Plaintiff "has not been under a disability . . . from February 8, 2015 through the date of th[e D]ecision." Tr. at 176 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV. Discussion

As noted, Plaintiff makes six arguments. For ease of discussion, the undersigned addresses the arguments related to Plaintiff's subjective symptoms (Plaintiff's first,

second, and fourth arguments) together. See Pl.'s Mem. at 7-9, 10-11.[7] Then, Plaintiff's third argument regarding the ALJ's consideration of her obesity and Plaintiff's sixth contention that the ALJ erred by not making findings regarding the combination of Plaintiff's impairments are addressed in turn. See id. at 9, 12.[8]

**A. Subjective Symptoms and Degeneration of Lumbar Spine and Sacroiliac Joints**

First, Plaintiff argues that the ALJ "failed to note Plaintiff's documented complaints and treatment for chronic diarrhea, chronic nausea, vomiting, foot ulcers and foot numbness, dizziness and headaches." Pl.'s Mem. at 8 (citation omitted). Plaintiff contends the ALJ "also failed to address the documented degeneration of Plaintiff's lumbar spine and sacroiliac joints which were consistent with Plaintiff's complaints of back and hip pain." Id. (citation omitted). Responding, Defendant asserts that "the ALJ was not required to discuss on an individual basis each and every allegation made by Plaintiff." Def.'s Mem. at 5 (citations omitted). Defendant further argues that "the ALJ did mention each of the allegations raised by Plaintiff when discussing Plaintiff's subjective complaints and the medical evidence." Id. at 6 (citation omitted).

Second, Plaintiff contends that "the ALJ failed to give a proper RFC hypothetical to the [VE]" because the ALJ "failed to note Plaintiff's complaints, substantiated in the medical records of chronic diarrhea, chronic nausea, vomiting, dizziness, headaches, fatigue,

---

[7] In making her first argument, Plaintiff also contends the ALJ failed to consider her degeneration of the lumbar spine and of the sacroiliac joints. This portion of the argument is addressed along with the rest of the argument regarding Plaintiff's subjective symptoms.

[8] As noted above, the undersigned does not address Plaintiff's fifth argument regarding the ALJ's RFC determination because it is deemed to be waived. See Pl.'s Mem. at 12-13.

numbness in her feet, and shortness of breath." Id. at 8-9 (citations omitted). Responding, Defendant asserts that "[t]he ALJ's discussion of the evidence, including Plaintiff's subjective complaints, shows that the ALJ considered Plaintiff's complaints of chronic diarrhea, chronic nausea, vomiting, dizziness, headaches, fatigue, numbness in her feet, shortness of breath, but [that the ALJ] did not find those symptoms consistent or supported by the record." Def.'s Mem. at 7 (citation omitted).

Third, Plaintiff contends that "[t]he ALJ in [the D]ecision actually cites to the evidence that supports . . . Plaintiff's allegations of pain from her ostomy site, from her back, and from her feet." Pl.'s Mem. at 10. Plaintiff then appears to imply the ALJ did not make express findings regarding Plaintiff's pain allegations. See id. Responding, Defendant argues that "the ALJ followed the proper legal standards and substantial evidence supports the ALJ's assessment of the consistency of Plaintiff's subjective complaints of pain and other symptoms." Def.'s Mem. at 10.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)). To reject a claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

The SSA recently issued new guidance to ALJs about how to evaluate subjective complaints of pain and other symptoms. The SSA has "eliminat[ed] the use of the term 'credibility' from [its] sub-regulatory policy, as [the R]egulations do not use this term." SSR 16-3P, 2017 WL 5180304, at *2 (Oct. 25, 2017).[9] "In doing so, [the SSA has] clarif[ied] that subjective symptom evaluation is not an examination of an individual's character." Id. Accordingly, ALJs are "instruct[ed] . . . to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms." Id. "The change in wording is meant to clarify that [ALJs] aren't in the business of impeaching claimants' character; obviously [ALJs] will

---

[9] There was a prior version of SSR 16-3P in place at the time of the ALJ's Decision. See SSR 16-3P, 2016 WL 1119029 (Mar. 16, 2016). The same relevant language quoted in this Report and Recommendation appears in this prior version. See id. at *1.

continue to assess the credibility of pain <u>assertions</u> by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." <u>Cole v. Colvin</u>, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e D]ecision." Tr. at 173.

To the extent Plaintiff argues the ALJ was required to discuss each of Plaintiff's subjective complaints, the ALJ addressed the vast majority of Plaintiff's numerous complaints. <u>See</u> Tr. at 169 (noting Plaintiff's reports of back pain); Tr. at 170 (observing Plaintiff "testified to experiencing pain in her feet and numbness"); Tr. at 172 (noting that Plaintiff "reported experiencing daily headaches and dizziness" and that "[s]he gets diarrhea that comes and goes depending on her diet, nausea[,] and abdominal pain occurring 3 times per week lasting around an hour"); Tr. at 173 (indicating Plaintiff "has issues with her feet where she gets numbness and cracking from an infection"). Moreover, the fact that the ALJ did not specifically refer to each one of Plaintiff's numerous complaints does not render the ALJ's Decision unsupported by substantial evidence. <u>See</u> <u>Dyer</u>, 395 F.3d at 1211 (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that [the ALJ] considered [the claimants] medical condition as a whole"). Upon review of the Decision, it

continue to assess the credibility of pain <u>assertions</u> by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." <u>Cole v. Colvin</u>, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e D]ecision." Tr. at 173.

To the extent Plaintiff argues the ALJ was required to discuss each of Plaintiff's subjective complaints, the ALJ addressed the vast majority of Plaintiff's numerous complaints. <u>See</u> Tr. at 169 (noting Plaintiff's reports of back pain); Tr. at 170 (observing Plaintiff "testified to experiencing pain in her feet and numbness"); Tr. at 172 (noting that Plaintiff "reported experiencing daily headaches and dizziness" and that "[s]he gets diarrhea that comes and goes depending on her diet, nausea[,] and abdominal pain occurring 3 times per week lasting around an hour"); Tr. at 173 (indicating Plaintiff "has issues with her feet where she gets numbness and cracking from an infection"). Moreover, the fact that the ALJ did not specifically refer to each one of Plaintiff's numerous complaints does not render the ALJ's Decision unsupported by substantial evidence. <u>See</u> <u>Dyer</u>, 395 F.3d at 1211 (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that [the ALJ] considered [the claimants] medical condition as a whole"). Upon review of the Decision, it

is clear the ALJ sufficiently considered Plaintiff's subjective symptoms. See Tr. at 169-70, 172-73.

As to Plaintiff's assertion that the ALJ did not discuss her lumbar degeneration, the ALJ explicitly noted that "[i]maging studies showed some lumbar degenerative changes," but that Plaintiff's "back pain appears to be a symptom related to the earlier cancer surgery and not a separate impairment as treatment notes indicate [Plaintiff] has positional back pain related to her prior surgery." Tr. at 169 (citing Tr. at 1461, 1491-1520). Although the ALJ did not expressly mention the degeneration of Plaintiff's sacroiliac joints, his failure to do so does not render the Decision unsupported by substantial evidence as it is clear the ALJ considered the record as a whole. See Dyer, 395 F.3d at 1211.

With regard to the VE hypothetical, the ALJ was not required to accept all of Plaintiff's subjective symptoms. See generally Wilson, 284 F.3d at 1225. Moreover, as noted above, it is clear from the Decision that the ALJ properly considered Plaintiff's subjective complaints. See Tr. at 169-70, 172-73. Contrary to Plaintiff's assertion, the ALJ did give explicit and adequate reasons for his findings regarding Plaintiff's subjective complaints. Specifically, the ALJ found that "despite testifying to not having driven since 2012, the record, including a report from [Plaintiff] to her doctor and the statement of [Plaintiff's] daughter indicates [Plaintiff] continued to drive in 2015 and 2016." Tr. at 173 (citing Tr. at 446, 1422). The ALJ stated that the "report from [Plaintiff's] daughter also reveals abilities greater than alleged by [Plaintiff]," Tr. at 173, and that Plaintiff "was able to care for her 4-year-old granddaughter every weekday and the older grandchildren after school," Tr. at 173 (citing Tr. at 446 (indicating Plaintiff "does not limit" her activities of daily

living; she does not need reminders for medication; she is able to drive and travel alone; she lives with her "daughter and four grandkids"; she cares for a four-year-old "grandkid all day during the week"; and she cares for older grandchildren daily after school)). Plaintiff "was also encouraged to engage in exercise and regular physical activity." Tr. at 173 (citing Tr. at 1282,[10] 1323, 1327). The ALJ further found that Plaintiff's "reports of daily headaches and dizziness along with frequent heart palpitations are inconsistent with the objective record." Tr. at 173. The ALJ observed that Plaintiff's "[h]eadaches and dizziness reports are only intermittent." Tr. at 173. This finding is supported by the record. See Tr. at 1417, 1428, 1436, 1439, 1441, 1449, 1492 1496. The ALJ found that "palpitations are only noted on a single occasion." Tr. at 173 (citing Tr. at 1417, 1425, 1428, 1436, 1439, 1441, 1443, 1316, 1320, 1322, 1328, 1473, 1492, 1496).[11]

**B. Obesity**

Plaintiff contends that "the effect of [her] obesity on her inability to get the hernia repaired and the pain she was clearly experiencing was entitled to considerably greater weight than that apparently assessed by the ALJ relative to his RFC finding." Pl.'s Mem. at 9. Responding, Defendant argues that "[t]he ALJ properly considered the evidence, including the evidence related to Plaintiff's obesity and her need for the hernia repair surgery, in assessing the RFC." Def.'s Mem. at 8 (citation omitted). According to

---

[10] The treatment note on this page does not directly state that Plaintiff was encouraged to engage in physical activity, but it does indicate that "[c]ounseling was provided on maintaining a healthy diet[ and] activity level . . . ." Tr. at 1282.

[11] Although the ALJ stated that palpitations are noted once, none of the records cited by the ALJ note palpitations, and the Court has not found any medical records indicating Plaintiff reported palpitations.

Defendant, "Plaintiff has failed to prove that her obesity or her condition in general, including the unrepaired hernia, impose additional limitations in her ability to work beyond those already included in the RFC." Id.

In 1999, the SSA deleted obesity from the listing of impairments. See SSR 02-1p, 2002 WL 34686281, at *1; see also 20 C.F.R. Part 404, Subpart P, Appendix 1. Nevertheless, obesity must still be taken into consideration when making the disability determination. See SSR 02-1p at *4-5. Social Security Ruling 02-1p provides guidance on how obesity should be analyzed, see id. at *1, and explains that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing," id. at *5.[12] A claimant's combination of impairments is medically equal to a listing "if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment." Id. Indeed, in some circumstances, obesity by itself may be equivalent to a listed impairment. Id. Because "[o]besity can cause limitation of function," the ALJ should "consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments . . . ." Id. at *6-7.

The ALJ, however, is not required to "make assumptions about the severity or functional effects of obesity combined with other impairments." Id. at *6. "[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to

---

[12] "This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." SSR 02-1p at *5.

work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) (quotation omitted); see also Kelly v. Comm'r Soc. Sec., No. 6:08-cv-1751-Orl-19DAB, 2010 WL 582771, *15 (M.D. Fla. Feb. 18, 2010) (unpublished) (citations omitted) (recognizing a finding of not disabled has been affirmed "where the record contains no evidence showing that the claimant's obesity affected her ability to perform work-related activities").

Here, Plaintiff does not explain why the effect of her obesity is entitled to "considerably greater weight" than that given by the ALJ. Pl.'s Mem. at 9. The ALJ stated that he "considered her obesity consistent with SSR 02-1 p in assessing the [RFC]." Tr. at 174. The ALJ noted that "[t]he obesity can be expected to have an effect on [Plaintiff's] functional abilities and has had an impact on the treatment of her hernia as a treatment provider indicated in April 2015 and March 2017 that [Plaintiff] should lose 60 pounds before she can have surgery on the hernia due to risk of recurrence and increased morbidity with the surgery." Tr. at 174 (citing Tr. at 1281, 1494). The ALJ, however, found that "the treatment of obesity has been conservative and [that Plaintiff] was simply encouraged to lose weight and referred to a dietician." Tr. at 174 (citing Tr. at 1323, 1327, 1494). The Court finds that the ALJ's findings regarding Plaintiff's obesity are supported by substantial evidence and that the ALJ properly considered Plaintiff's obesity.

**C. Combination of Impairments**

Plaintiff argues the ALJ "failed to state how in combination [Plaintiff's] various severe impairments would impact . . . Plaintiff's ability to perform even a limited range of

light work." Pl.'s Mem. at 12. Plaintiff contends that because the ALJ did not "include" certain documented symptoms,[13] the Court "cannot know how the ALJ assessed the full combination of . . . Plaintiff's impairments and therefore the effect on her capacity for more than sedentary gainful activity." Id. Responding, Defendant asserts that "[i]n discussing the medical evidence, the ALJ provide[d] further explanation for his consideration of the various impairments, but [the D]ecision as a whole makes clear he considered all of the impairments in combination when determining the limitations included in the RFC." Def.'s Mem. at 12 (citation omitted).

Step two of the sequential evaluation process requires the ALJ to determine if a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work[.]" Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter, 791 F.2d at 1547. In the context of a Social Security disability benefits case, a condition is severe if it affects a claimant's ability to maintain employment. See id. Further, "[t]he severe impairment either must have lasted or must be expected to last for at least 12 months." Davis v. Barnhart, 186 F. App'x 965, 967 (11th Cir. 2006) (unpublished) (citing Barnhart v. Walton, 535 U.S. 212, 216 (2002)).

---

[13] It appears Plaintiff is referring to the ALJ's failure to include the symptoms in the RFC.

A severe impairment interferes with a claimant's ability to perform "basic work activities." See Bowen, 482 U.S. at 141. The Code of Federal Regulations provides six examples of "basic work activities": (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers, and unusual work situations; and (6) Dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b); see also Davis, 186 F. App'x at 966-67.

Here, it is abundantly clear that the ALJ considered Plaintiff's impairments in combination throughout the sequential evaluation process. After making the step two findings, the ALJ proceeded to the next steps of the sequential evaluation process by finding that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 171 (emphasis and citation omitted). The ALJ stated that he "considered, in particular, the listings found under Sections 4.00 (Cardiovascular System), 9.00 (Endocrine Disorders) and 13.00 (Cancer (Malignant Neoplastic Diseases))." Tr. at 171. Then, the ALJ noted that he carefully considered the "entire record" in determining Plaintiff's RFC at a later step in the sequential evaluation process. Tr. at 172 (emphasis omitted); see Burgin v. Comm'r of Soc. Sec., 420 F. App'x at 903; Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010); see also Jones v. Dept. of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991) (recognizing that a simple expression that the ALJ considered a claimant's impairments in combination constitutes a sufficient

statement of such findings). As noted above, the ALJ was not required to accept Plaintiff's symptoms. Upon review, the Court finds that the ALJ adequately considered the record as a whole and Plaintiff's impairments in combination.

### V. Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 23, 2019.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of Record